## JESSE LEWIS *versus* JOSEPH LYMAN.

By an indenture, the plaintiff " demised, granted and to farm let " to B. and S., nis farm, with the buildings thereon, reserving, however, for his own use, certain rooms and privileges in the kitchen &c., *habendum* for one year, they covenanting to carry on the farm in a husbandlike manner, to furnish one cow and other stock, one half of the seed, &c. and to divide the grain, &c. and deposit the plaintiff's portion in his part of the granary and cellar, and the plaintiff stipulating to furnish certain farming utensils to be kept in repair by B. and S., twelve cows, &c. the product of the cows to be equally divided between the parties ; and it was further stipulated, that the winter manure should be put on the land, at the plaintiff's direction, that the hay should all be fed out on the farm, and that half of the calves should be reared, if suitable and promising for that purpose, and the other half killed for veal. It was *held*, that this instrument did not vest in B. and S. the property in the hay and in the calves to be reared, produced on the farm during the term, so as to render the same liable to attachment at the suit of their creditors, but that it required, that all the hay should be consumed on the farm, and that such calves should be kept on the farm, until the expiration of the term, when the division was to be made.

THIS was an action against the sheriff of the county of Hampshire, for the default of one of his deputies.

The declaration set forth, that the plaintiff, on the 14th of March, 1836, being the owner of a farm, together with a large number of cows and other cattle usually kept by him thereon, entered into an indenture with Warren Button and Alfred Stebbins, whereby the plaintiff, for the consideration therein mentioned, " demised, granted and to farm let " unto them, their heirs, &c. the farm in question, with the buildings thereon, reserving, however, for his own use, certain rooms, " the privilege of baking in the oven, half of the buttery, half of the meal room and half of the cellar, with the privilege of passing through the kitchen for the above purposes, also the privilege of washing in the back-room, and half the wood-house and corn-house," *habendum* for the term of one year from the 1st of April then next ; and that Button and Stebbins, on their part, covenanted and agreed to work the farm in a good and husbandlike manner, to do and perform all the labor necessary to be done on the farm, to furnish one half of the seed necessary to be sown on the premises and one half of the salt necessary to be used in the dairy and to be given to the stock, to cut down and fit for the fire so much wood as should be neces-

sary for the plaintiff and for one fire for themselves, the wood to be taken from such part of the lot as the plaintiff should direct. The declaration further set forth, that it was provided, in such contract, that the plaintiff should furnish two yoke of oxen to be worked on the farm, twelve cows and heifers for the dairy, one bull, fourteen sheep, &c. ; that Button and Stebbins should furnish one cow and as many young creatures and sheep as the plaintiff furnished ; that the product of the cows should be equally divided between the parties, each party having the proceeds of their own sheep and horses ; that the plaintiff should furnish certain farming utensils to be used on the farm and kept in repair by Button and Stebbins ; that the winter dung at both barns, with certain exceptions, should be put on the grass-land at the plaintiff's direction, and the other manure be put on the plough-land ; that Button and Stebbins should sow as much winter-rye as was then growing on the farm, thresh the grain in December, and divide it by measure, and also the corn and the potatoes, and deposit the plaintiff's portion in the granary and cellar ; that they should tend the garden in due season and plant the plaintiff's half as he should direct, each party sharing equally in the produce ; that *the hay and fodder should all be fed out on the farm ;* that Button and Stebbins should leave as much wood at the door as was there when they came into possession and in like order ; and that *the calves should be half raised, if suitable and promising for that purpose, and the other half vealed.*

The declaration then averred, that the plaintiff had performed his part of the contract, and that he had good right to have all the hay and fodder produced by the farm during the term, fed out and consumed thereon, and to have at least one half of the calves, if suitable and promising, raised and kept on the farm during the term, to be equally divided between the parties at the expiration thereof ; that all the hay raised upon the farm and being thereon, at the time when the defendant committed the acts and grievances complained of, was not more than sufficient for the support of the cattle, sheep and horses of the plaintiff, mentioned in the writing obligatory, during the residue of the term ; that five calves, being less than one half the product of the plaintiff's cows during the term, suitable and promising to

be raised, were upon the farm when the defendant committed the acts complained of, yet that the defendant, well knowing the premises, on the 24th of December, 1836, and at divers other times &c., by the hands of Samuel Phelps, one of his deputies, unlawfully seised and carried away from the farm thirty tons of hay, and converted the same to his own use, by reason whereof the plaintiff had been compelled to purchase great quantities of hay and other provisions for the sustenance of his cattle, and also seised and converted to his own use, five calves, being the offspring of the plaintiff's cows, within the term mentioned in the contract, which calves the plaintiff had a right to have divided equally at the expiration of such term.

The defendant filed a brief statement, setting forth that the hay and one half of the calves were the property of Button and Stebbins, and as such were attached by his deputy on writs sued out by some of their creditors, and were afterwards sold and the proceeds applied in satisfaction of executions obtained by such creditors.

It was agreed by the parties, that Button and Stebbins entered upon the farm, and remained there until the hay and calves were attached.

*Wells* and *Bowdoin*, for the plaintiff, to the point, that this was not a lease, although the words " demise, grant and to farm let " are used, but a contract for a special partnership in carrying on the farm, there being no covenant for quiet enjoyment or for the payment of rent, express or implied, cited Bac. Abr. *Leases*, (*Introduction*); that if it was not strictly a contract of partnership, it was intended by the parties, that the plaintiff should have a concurrent possession and interest in the products of the farm, during the term, *Foote* v. *Colvin*, 3 Johns. R. 216 ; *Bradish* v. *Shenck*, 8 Johns. R. 151 ; *Chandler* v. *Thurston*, 10 Pick. 205 ; *Macomber* v. *Parker*, 14 Pick. 505 ; *Beaumont* v. *Crane*, 14 Mass. R. 400 ; that if any principle of law required that the hay &c. should be considered as in the constructive possession of Button and Stebbins, then they held the same as trustees, and it was not attachable by the defendant, who, as is alleged in the declaration, had notice of the trust, *Fisher* v. *Fields*, 10 Johns. R. 495 ; *Kip* v. *Bank of New York*, 10 Johns. R. 63 ; *Anderson* v

*Sept.* 27th

Lewis
v.
Lyman.

*Van Alen,* 12 Johns. R. 343 ; and that if the contract was to be deemed a lease, then inasmuch as the out-going tenant is not entitled to the manure made on the farm, it would be waste on the part of Button and Stebbins, or of their creditors, to take away the hay, from which the manure was to be produced, *Lassell* v. *Reed,* 6 Greenleaf, 222 ; *Daniels* v *Pond,* 21 Pick. 367 ; *Kittredge* v. *Woods,* 3 N. Hamp. R. 503 ; *Stone* v. *Proctor,* 2 Chipman, 108 ; *Chamberlain* v. *Shaw,* in Berkshire, 1836 ; *Brown* v. *Crump,* 1 C. Marshall, 567 ; *Whitney* v. *Wright,* 15 Wendell, 17Q.

*Forbes,* for the defendant, to the point, that the contract was to be deemed a lease, the benefits reserved to the plaintiff thereby being equivalent to a reservation of rent, cited *Fiske* v *Framingham Manufacturing Co.* 14 Pick. 491; 4 Bac. Abr. *Lease, K ;* Shep. Touchst. 266, 267 ; and that the property in the products of the farm vested in Button and Stebbins, as the lessees, and so continued until a division and delivery was made, Buller's N. P. 85 ; 3 Selw. N. P. 1103 ; 3 Stark. on Evid. 1437, note *(c.)* ; *Butterfield* v. *Baker,* 5 Pick. 522 ; *Wait, Appellant &c.* 7 Pick. 100 ; *Chandler* v. *Thurston,* 10 Pick. 205.

*April term
1840, in
Hampshire.*

PUTNAM J. drew up the opinion of the Court.* For the defendant it has been earnestly contended, that the writing obligatory amounts to a lease of the farm, stock and farming tools and utensils, for one year ; that the produce became the absolute property of the tenants, who were the judgment and execution debtors ; that the defendant was perfectly justified in levying upon the same in satisfaction of the executions against Button and Stebbins ; that the only remedy for the plaintiff is upon the covenants, contained in the writing obligatory, on the part of the tenants to be performed ; and that the facts do not warrant any action in the nature of a suit for an injury to the plaintiff's reversionary interest in the premises.

On the other hand, the plaintiff contends, that all the hay and fodder which were grown or produced on the farm, were specifically appropriated to be fed out and spent by the tenants thereon, and that the calves produced by his cows, which were taken by the defendant, were to be kept and continued on the

---

* *Dewey* J. did not sit in the cause.

farm until the expiration of the lease or writing obligatory, to the end that the farm should be kept in good heart and condition.

The defendant claims a right on the part of the creditors of the tenants, to interfere with and break up this arrangement before the expiration of the term.

The hay and fodder which, according to the agreement, should have been fed out to the plaintiff's stock and spent on the farm, has been taken and carried away, and a part of the stock also has been taken and carried away, which was to have remained upon the farm and been divided, after the expiration of the term, between the plaintiff and the tenants.

The plaintiff has suffered, as he avers, great damage from these wrongful acts of the defendant, and claims to recover as much money, in this special action upon his case, as would indemnify him, and would put him in as good a situation in point of property as he would have been in, if the hay and fodder had all been fed out and spent, and the stock had all remained on the farm until the end of the term, and had been then divided.

Whatever technical objections may be raised in the case, it must be obvious to every practical farmer, that the provisions which are contained in the writing obligatory, are perfectly intelligible, as well as consistent with the rules of good husbandry. The case must be determined according to the true construction of the contract, taking into consideration the whole of it together. The first part of the indenture, for example, wherein the plaintiff demised, granted and to farm let the farm &c. for one year, would, without any explanation or qualification, seem to imply that the lessor granted to the lessees all the produce, for their own use, which could be gathered and taken during the term, subjecting the same to their own disposal, as well as to the attachments and levies of their creditors. But that part of the indenture is to be compared and construed with other parts, which are inconsistent with such an implication. It must be considered, for example, in connexion with the provision, " that all the hay and fodder is to be fed out on the farm," which is contained in a subsequent part of the same instrument. And upon a view of the whole ground we think,

that nothing ean be more clear, than that it was not the intent, either of the plaintiff or of the tenants, that the latter should have at their own disposal all the hay and fodder which should be made upon the farm, during the year. Taking the whole contract together, it is manifest, that the tenants had a limited right or interest in the hay and fodder, viz. only such a right or benefit as would result to them from having it given to the stock upon the farm, whereby their proportion of the produce of the dairy, and of the produce of the stock, would be increased. At the end of the term the hay and fodder, in the contemplation of the parties, would be consumed and reduced to manure, which would belong to the farm.

The plaintiff, therefore, as the owner of the farm, had a much greater concern in the hay and fodder than the tenants had. So far as related to the produce of the dairy and of the stock, the plaintiff had an equal concern with the tenants. But beyond this the plaintiff, as the owner of the stock, had an interest in having it fed and sustained upon the hay and fodder produced from the farm ; and he had the sole interest in the manure which would arise from the consumption of the hay and fodder, as is before suggested. We have said that the manure would belong to the owner of the farm. Such is the law of New York. *Middlebrook* v. *Corwen*, 15 Wendell, 169. The tenant has no right to remove or dispose of it at the end of the term. In New Hampshire it would pass as incident to the land, to the grantee, unless there were a reservation made in the deed by the grantor. *Kittredge* v. *Woods*, 3 N. Hamp. R. 503. And in Maine the rule applies to and includes the manure which is made from the hay *furnished by the tenant himself* during the term. It all belongs to the farm. Chief Justice *Mellen* rests the decision on the ground of public policy. And the case of *Daniels* v. *Pond*, 21 Pick. 367, was decided upon the same grounds. The out-going tenant has no right to carry the manure off from the farm or appropriate it to his own use.

Nor is it a valid objection, that the hay and fodder were not in actual existence at the time when the covenant or contract for the appropriation of the same was made. The subject matter of the agreement existed potentially. Ayl. Civ. Law,

*lib.* 6, *tit.* 3; 2 Kent's Comm. (3d ed.) 468, note. This principle is recognized in *Fitzwilliam* v. *Parson of Arcuay,* 21 H. 6. 43, touching the grant of the parson of his tithe wool of the next year. Plowd. 13, (*a*). The case of *Grantham* v. *Hawley,* Hob. 131, is strongly illustrative of the point under consideration. There Sutton, seised of lands, granted the same to Sankee for twenty-one years, and did covenant and grant to and with Sankee, his executors and assigns, that it should be lawful for him to take and carry away, to his own use, such corn as should be growing upon the ground at the end of the term. The plaintiff purchased the reversion, and the defendant purchased of the executor of Sankee. And the court held, "that the property and very right of the corn when it happened, was passed away; for it was both a covenant and a grant; and though the lessor had it not actually in him, nor certain, yet he had it potentially; for the land is the mother of all roots and fruits. Therefore, he that hath it may grant all fruits that may arise upon or after; and the property shall pass as soon as the fruits are extant."

So here, the contract under consideration had a prospective operation. It was intended to embrace the crop which should thereafter be produced, and to designate and appropriate to each party his proportion of the property. It purports to provide a compensation for the labor and services of the tenants in carrying on the farm, and not to grant the whole of the produce to them in consideration of the covenants on their part to be performed; on the contrary, it shows clearly that the plaintiff intended to keep the staff in his own hands, as he had good right to do. He intended to grant to the tenants a certain part of the produce of the farm and of the stock for their work, and to reserve all the rest to be specially applied for his own use. The contract cannot be understood as giving a right to the tenants to sell the hay from the farm for their own use. It cannot be supposed, that it was intended to be subjected to their debts, and carried away from the farm. Such a construction would be as unreasonable as it would be to suppose that the tenants were authorized to sell the land itself. The part of the produce which was granted by the plaintiff was in the nature of wages for services, so that all the produce, except that part

Lewis
*v.*
Lyman

which was granted to the tenants, became and remained the property of the plaintiff.

It has been held in New York, *Foote* v. *Colvin*, 3 Johns R. 216, that where the owner of land agrees with another, that he may sow the land on shares, they may maintain a joint action of trespass against a third person who enters and carries away the crop. If that be so, and if it be true that the plaintiff and the tenants had a joint interest, and might have maintained a joint action for the wrong complained of in this action, it is now too late to make any objection on that account; it should have been pleaded in abatement; *Sedgworth* v. *Overend*, 7 T. R. 280; and the plaintiff may recover so far as his interest has been prejudiced.

The provision in the contract requiring the hay to be spent upon the farm, is conformable to rules of good husbandry in England, and would be implied from the relation between landlord and tenant, if it were not expressed. "Every tenant," (to use the words of one of the most eminent and practical English judges,) "every tenant, where there is no particular agreement dispensing with that engagement, is bound to cultivate his farm in a husbandlike manner, and to consume the produce on it. This is an engagement which arises out of the letting, and which the tenant cannot dispense with, unless by special agreement." Opinion of *Buller* J., cited by *Gibbs* C. J. in *Brown* v. *Crump*, 1 Marshall, 567. And so in the civil law, Inst. *lib.* 2, *tit.* 1, § 38, the usufructuary is bound to act in every respect as a good husbandman. "*Recte enim colere, et quasi bonus paterfamilias uti, debet.*"

In Massachusetts the rules of good husbandry require, that so much, at the least, of the produce should be spent upon the farm, as would be sufficient to feed all the stock properly kept thereon; for the manure resulting from the consumption of at least so much of the produce, would be requisite to keep the farm in good order or condition of fertility. We speak now of the general course of farming. There are many exceptions from the general rule. Where other and equivalent sources of manure can be economically obtained, such, for example, as kelp and sea-weed, muscle beds and other marine substances, manure from livery stables, &c. a part of the hay may well be

sold   But, as a general rule, it may be considered, that the hay or other produce, at least to the extent of sustaining the stock, should be spent upon the farm, as the means of preserving and continuing its capacity of production.

The case differs essentially from *Butterfield* v. *Baker*, 5 Pick. 522, where a quantity of corn, which was produced on a farm, was taken by the sheriff as the property of the tenant. No question arose in that case, whether or not the corn might be sold by the tenant and carried off from the farm consistently with the rules of good husbandry ; but whether the corn should be considered as conveyed by the tenant to the lessor, or was liable to the attachment of the creditors of the lessee, before any delivery of the corn. In the lease the lessor reserved a right to enter and take the produce, on account of rent ; but he had not availed himself of the right reserved. He had not entered and seized the corn, and there had been no delivery of it to the landlord. In truth, there was no rent due from the tenant when the corn was attached. Under those circumstances, it was held, that the attachment should prevail against the claim of the lessor. The corn was a part of the produce which belonged to the tenant.

But according to the true construction of the contract under consideration, the property in the hay never passed to the tenants ; but, on the contrary, the hay was reserved and appropriated to be spent on the farm. So it seems to us to be very clear, that the sheriff had no right to take it away from the farm in virtue of any attachments or executions against the tenants.

And the claim of the plaintiff to recover damage for the calves which the defendant has taken, is also well maintained. These calves, with other stock, were to be kept on the farm until the expiration of the lease. No division of the stock was to be made until that period. The plaintiff, as landlord, had a right to the benefit which would arise from the keeping of those calves on the farm until the end of the term. The tenants would have had no more right to take away the calves from the farm before the expiration of the lease, than a partner would have to take away a part of the stock invested on the joint account for a time to come and unexpired. And the creditor of

Lewis
v.
Lyman.

the tenants would have no more right to take away the property so appropriated, than a creditor of one partner would have to take the partnership property before and without paying or satisfying what would be due from the debtor partner to the concern.

The contract under consideration was bottomed essentially on the rules of good husbandry ; for the hard soil of New England must be replenished or it will cease to be fruitful. It is beneficial to the public as well as to the individuals concerned ; to the public, inasmuch as it has a tendency to promote industry and agriculture ; to the landlord, because it enables him to receive a reasonable income without impoverishing his lands ; and to the tenant or laboring farmer, because, however poor he may be, it enables him to apply his skill and labor to obtain a comfortable support. It is also an honest contract, and one that has no tendency to prejudice the claims of creditors. If it were promulgated from the house top, it would hold out no false credit ; for, so far as it relates to the tenants, it purports only to make a proper compensation for services to be performed.

The plaintiff is therefore entitled to recover for the injury which he has sustained in consequence of the unlawful interference of the defendant, by means whereof the performance of the contract has been prevented.

The cause is to be committed to an auditor to ascertain and report the damages, the measure of which should be such a sum as would put the plaintiff in as good a situation as to property, as he would have been in if the wrongful acts, whereof the plaintiff complains, had not been committed by the defendant.